IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

STEVEN A. VANDERBERG                                                                    PLAINTIFF

V.                                                             CIVIL ACTION NO. 3:15-CV-00214-NBB-JMV

REXAM BEVERAGE CAN COMPANY                                                DEFENDANT

MEMORANDUM OPINION

Presently before the court is the defendant's motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiff, Steven Vanderberg, brings this action against his former employer, Rexam Beverage Can Company, alleging violations under 29 U.S.C. § 621 for claims arising under the Age Discrimination in Employment Act ("ADEA"). He further alleges violations under 42 U.S.C. § 12101 for claims arising under the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Amendments Act ("ADAA"), as well as violations under 42 U.S.C. § 2601 for claims arising under the Family and Medical Leave Act ("FMLA").

Vanderberg contends that were it not for his age, sixty-one at the time, or his alleged disability, suffering from migraine headaches, Rexam would not have terminated his employment. He further asserts that his termination was act of retaliation for his discussion with Rexam about the possible need for FMLA leave on account of his migraines.

Vanderberg began working for Rexam as a Spray Room Operator in July of 1988. In November of 2003, he was promoted to the position of Front End Maintainer. One of Vanderberg's primary responsibilities as front end maintainer was to perform preventative maintenance. Preventative maintenance consisted of performing daily checks of the five "body-

maker" machines assigned to him, whereby he was to check and record the pressure readings of the machines' main twenty-five gauges, and to report any defective or broken gauges.

Rexam required that he document this information in what it refers to as a Preventative Maintenance Sheet ("PM sheet"), and then submit these forms to his maintenance supervisor for review and safe-keeping. Accurate documentation is critical and necessary to alert Rexam to any mechanical problems so that equipment damage and resultant monetary loss can be prevented.

On January 8, 2015, following the plaintiff's 7 p.m. to 7 a.m. shift, Maintenance Supervisor Jeff Schmidt discovered a stack of one hundred and fifty (150) photocopies of partially completed PM sheets that had been left on the copy machine. The pressure readings of the twenty-five main gauges had been prefilled in and the readings on all copies were identical. Additionally, the photocopies were left undated and unsigned.

Schmidt immediately set out to determine who had made the copies. After comparing them with recently submitted PM sheets, Schmidt realized that the copies were identical to the PM sheets submitted by Vanderberg. Schmidt's investigation also revealed that Vanderberg had been submitting these pre-filled photocopied PM sheets since at least December 5, 2014.

Schmidt then directed another mechanic, Barry Richmond, to perform a check of Vanderberg's assigned machines and record his findings in a PM sheet. The readings for the gauges submitted by Richmond differed, and in some instances differed greatly, from those submitted by Vanderberg earlier that same day. Moreover, Richmond reported multiple broken or defective gauges while the PM sheet submitted by Vanderberg contained no such report.

Soon after, Schmidt communicated this information to the plant manager, Jason Hurst, and Rexam's Human Resources Manager, Rose Doyle. On January 15, 2015, Schmidt, Hurst and Doyle met with Vanderberg to discuss what Schmidt had found. Vanderberg initially denied making the copies but, when pressed on the issue, he admitted to making them, contending he

had only done so in error. Eventually he confessed that he had been submitting pre-filled photocopied PM sheets for approximately two months.

In attempting to explain his actions, Vanderberg claimed he had only created these copies as a means to make his job more efficient. He further asserted that if the actual pressure readings differed from the numbers he had prefilled in, he would scratch them out and change them accordingly. Management responded by pointing out that, since December 5, 2014, every PM sheet he had submitted contained the same readings each day, and that none had been scratched out or changed. Vanderberg failed to provide an explanation on this point. It is also undisputed that these numbers fluctuate daily and thus are not typically identical over an extended period of time.

On January 21, 2015, Rexam terminated Vanderberg's employment. Rexam informed Vanderberg he was being fired for falsifying company documents by submitting photocopied, pre-filled PM sheets, and because, based on the stack of copies found, the evidence indicated that he intended to continue to falsify company documents had his actions not been discovered.

Vanderberg alleges that he has suffered from migraines since 1996, but that in recent years they have become more frequent and more severe. According to Vanderberg, severe migraines leave him totally incapacitated and unable to work. In addition, on two occasions, once in 2004 and again in 2014, Vanderberg was transported from work to the hospital because of a migraine.

On September 24, 2014, Vanderberg contacted Doyle about the possible need for FMLA leave on account of his migraines. Doyle immediately sent him the requisite FMLA paperwork with an accompanying due date of October 8, 2014. Doyle, however, did not receive Vanderberg's FMLA forms until December 14, 2014. While the medical certification form was completed and signed by Vanderberg's doctor, it was not done so until December 11, 2014, as

indicated by the doctor's dated signature. Moreover, the paperwork that Vanderberg was responsible for filling out was not only submitted two months late, it was incomplete and unsigned. Vanderberg never asked for an extension of time to complete the paperwork, never inquired further about FMLA leave, and never actually requested any time off.

Despite Rexam's articulated reason for his termination, Vanderberg believes he was terminated because of his age, his migraines, and his inquiry about the possible need for FMLA leave. Accordingly, he filed a charge with the Equal Employment Opportunity Commission on September 24, 2015, and, after exhausting his administrative remedies, filed the instant suit. Rexam now moves for summary judgment and argues that Vanderberg has failed to demonstrate the existence of a genuine issue of material fact.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. Further, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied

that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

In moving for summary judgment, Rexam contends that Vanderberg's ADEA claim fails because he cannot overcome its articulated legitimate, non-discriminatory reason for its decision to terminate his employment. Rexam additionally contends that Vanderberg cannot make out a prima facie case on either his ADA or FMLA claims.

*Plaintiff's ADEA Claim*

Vanderberg asserts that Rexam discriminated against him on the basis of his age when it terminated his employment. The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). In analyzing an ADEA claim, the court employs the *McDonnell-Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

According to this framework, a plaintiff must first present a prima facie case of discrimination. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993). Once the plaintiff has made out a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985). If the employer succeeds, the burden of persuasion shifts back to the plaintiff to present sufficient evidence that the employer's stated reason is mere pretext for discrimination. *Bodenheimer*, 5 F.3d at 957-58.

In the instant case, it is undisputed that Vanderberg has made out a prima facie case of age discrimination. Accordingly, the burden shifts to Rexam to articulate a legitimate, non-

5

discriminatory reason for its decision to terminate Vanderberg's employment. Rexam contends it discharged the plaintiff because Vanderberg had falsified company documents and, additionally, that the evidence indicated that he intended to continue falsifying company documents had his actions not been discovered.

Now Vanderberg must come forward with substantial evidence of pretext. *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001). In arguing that Rexam's proffered explanation is mere pretext, the court notes that Vanderberg does not dispute the underlying facts which ultimately led Rexam to believe Vanderberg had violated company policy. Instead, most of his evidence merely restates his prima facie case or otherwise is irrelevant to his ADEA claim, with a few exceptions.

For example, in trying to establish pretext, Vanderberg asserts that he was sixty-one (61) years old at the time of his termination and that the person who eventually replaced him was twenty-seven (27) years old. While these facts certainly helped in establishing his prima facie case, they are of little relevance at this stage in the analysis. Vanderberg additionally points out that he suffered from migraines and had spoken with Rexam about the possible need for FMLA leave. Although this is accurate, it is also irrelevant to a claim for age discrimination.

Vanderberg also contends that he believes the real reason for his termination was because he was "getting old and broken down." The Fifth Circuit has consistently held, however, that an employee's "subjective belief of discrimination" is insufficient to show pretext. *Auguster*, 249 F.3d at 403; *see also Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1443-44 (5th Cir. 1995).

Vanderberg further insists that he did not believe he was falsifying company documents but, instead, was merely trying to improve the process by making it more efficient. He also does not believe his actions actually harmed the company. But, whether Vanderberg believed he was

violating company policy or whether he intended to do so has no relevance in our analysis because it is well-settled in the Fifth Circuit that a "a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith." *Cervantez v. KMGP Services Co. Inc.*, 349 F. App'x 4, 10 (5th Cir. 2009); *see also Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993).

The undisputed facts presented demonstrate that Vanderberg had submitted photocopied, pre-filled PM sheets for a period of approximately two months, that the readings on all sheets were identical and never altered during that entire period, and that he had made at least one hundred and fifty additional copies of these sheets with the intention to continue using them. Based on this, the court finds Rexam's belief that Vanderberg had falsified company documents to be reasonable and made in good faith.

Lastly, Vanderberg attempts to show pretext through evidence of disparate treatment. Specifically, he articulates an incident in which Rexam discovered that another employee, Andri Steele, had falsified a company document but, instead of discharging Steele, Rexam merely gave him a four-day suspension. To be sufficiently probative of disparate treatment, the employees must be similarly situated and treated differently under nearly identical circumstances. *Perez v. Texas Dept. of Criminal Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004). Further, the treatment of an employee "who had different supervisors than the plaintiff, who worked in different parts of the employer's company, or whose [punishment] was removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's discharge." *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000).

In applying these well-settled principles, the court finds that the Andri Steele incident does not show that Rexam's proffered reason is pretext. First, the court notes that Andri Steel

was sixty (60) years old at the time of his incident. This is only one year younger than Vanderberg at the time of his termination. The court finds this fact important because it shows that this is not a case where the employee alleged to have received more favorable treatment was significantly younger than the plaintiff.

Moreover, Steele and Vanderberg were not similarly situated. The two held different positions and worked in different areas of the plant as Steele was a Back End Maintainer and was assigned to the Back End, while Vanderberg was a Front End Maintainer assigned to the Front End. The job responsibilities for the two positions were also significantly different and required that they work on different types of equipment. In addition, the plaintiff and Steele worked under different supervisors. And the incident with Steele occurred over a year after Vanderberg was terminated.

In addition to the two employees not being similarly situated, their respective punishments were also not given under nearly identical circumstances. With respect to Steele, he represented to Rexam that he had completed a pre-operations inspection on plant equipment when in fact he had not. After investigating, Rexam was able to conclude that Steele's conduct was an isolated incident, finding no evidence that it had occurred before. On the other hand, the undisputed facts show that Vanderberg's conduct was not an isolated incident because he had submitted photocopied, pre-filled PM sheets for a period of two months. Moreover, Vanderberg made one hundred and fifty copies of these sheets, indicating to Rexam that he intended to continue to submit photocopied, pre-filled PM sheets had his actions not been discovered.

Based on the foregoing discussion, the court agrees that the plaintiff has failed to overcome Rexam's proffered legitimate, non-discriminatory reason for its actions. Accordingly, the court finds that Vanderberg's ADEA claim must fail.

*Plaintiff's ADA Claims*

Vanderberg additionally asserts that Rexam discriminated against him on the basis of his disability when it terminated his employment. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, Vanderberg must prove (1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision because of his disability. *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). Rexam argues that Vanderberg fails to establish the first and third elements of his prima facie case.

Rexam first contends that Vanderberg cannot show that he has a disability within the meaning of the ADA. Under the ADA, an individual has a "disability" if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a). An individual may also have a "disability" if he has "a record of such impairment," or is "regarded as having such an impairment." 42 U.S.C. § 12102(1)(b)-(c). Major life activities include "performing manual tasks, seeing . . . concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(a).

Rexam asserts that Vanderberg has not shown that he was substantially limited in a major life activity. The court disagrees. Vanderberg testified that when he does have a severe migraine, it leaves him totally incapacitated and unable to work. There was also testimony that when he had a migraine at work, he had to take a nap in the breakroom and could not do anything until it went away. Moreover, Vanderberg's primary physician confirmed via the medical certification form that his severe migraines prevented him from being able to perform his essential job functions.

His testimony further demonstrated that he had missed work on account of his migraines more than once and had informed Rexam accordingly. In addition, Vanderberg testified that he

was rushed to the hospital from work on two occasions because of migraines. Rexam has not challenged the accuracy of the above-described testimony and evidence. Accordingly, the court is persuaded that Vanderberg has demonstrated the existence of a disability for purposes of this summary judgment motion.

Rexam also contends that Vanderberg cannot demonstrate that the adverse employment decision was because of his migraines. In response, Vanderberg argues he has shown a causal connection because of the temporal proximity between his talks with Doyle about the possible need for FMLA leave and his termination.

Vanderberg contacted Doyle on September 24, 2014, and informed her that he might possibly need FMLA leave in the future because of his migraines. Rexam terminated Vanderberg's employment on January 21, 2015. Based on these dates, there was almost a four-month gap in time between Vanderberg's discussion with Doyle and his termination.

The court first points out that, logically, this argument seems more applicable in making a prima facie case for his FMLA claim, rather than the ADA claim. That aside, the court still finds the temporal proximity, alone, to be insufficient. For such evidence to be indicative of a causal connection, the temporal proximity must be "very close." *Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). Moreover, the Fifth Circuit has repeatedly held that a three to four month time span between the protected activity and the adverse employment decision, alone, is insufficient. *See Baumester v. AIG Global Inv. Corp.*, 420 F. App'x 351 (5th Cir. 2011); *Barkley v. Singing River Elec. Power Assn.*, 433 F. App'x 254 (5th Cir. 2011); *Stroud v. BMC Software, Inc.*, 2008 WL 2325639 (5th Cir. 2008); *Strong*, 482 F.3d 802.

The plaintiff provides no additional evidence and makes no other argument with regard to this element. The court, therefore, finds that Vanderberg has failed to demonstrate that his

termination was on account of his migraines and, consequently, that he has failed to make out a prima facie case for disability discrimination.

Even assuming *arguendo* that Vanderberg had presented a prima facie case on his ADA claim, he cannot overcome Rexam's articulated legitimate, non-discriminatory reason for his termination. Many of Vanderberg's arguments for pretext with regard to his ADA claim are identical to those made for his ADEA claim. Aside from these identical arguments, Vanderberg points to other ailments he has suffered from in the past which, while certainly unfortunate, have nothing to do with his present claim. And much of his pretext argument concerns factual assertions demonstrating merely that he has a disability and that he discussed the possible need for FMLA leave with Rexam. For these reasons and those articulated with respect to Vanderberg's ADEA claim, the court finds that the plaintiff has not shown Rexam's proffered legitimate, non-discriminatory reason to be mere pretext.

Vanderberg additionally contends that Rexam violated the ADA in failing to provide him with a reasonable accommodation. The plaintiff, however, asserts this claim for the first time in his response to the defendant's motion for summary judgment. Accordingly, this claim is not properly before the court and is, therefore, procedurally barred. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108 (5th Cir. 2005).

Moreover, even if the aforementioned claim were properly before the court, it would fail on the merits. Vanderberg now argues that Rexam could have offered him time off as a reasonable accommodation under the ADA. "An employee who needs an accommodation because of a disability has the responsibility of informing [his] employer." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). Further, "where the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the

11

disability and resulting limitations, and to suggest the reasonable accommodation." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 165 (5th Cir. 1996).

Vanderberg has presented no evidence demonstrating that he ever informed Rexam of his need for an accommodation. Moreover, "no such requirement exists under the ADA" to reasonably accommodate an employee's leave of absence, as a "reasonable accommodation does not require [an employer] to wait indefinitely for [the employee's] medical condition to be corrected." *Vanderford v. Parker Hannifin Corp.*, 971 F. Supp. 1079, 1081 (N.D. Miss. 1997) (citing *Rogers v. International Marine*, 87 F.3d 755, 759 (5th Cir. 1996)). Additionally, it is undisputed that Rexam permitted Vanderberg to take off whenever he requested. So, assuming that a leave of absence was a reasonable accommodation under the ADA, the plaintiff was in fact provided such accommodation.

Based on the foregoing discussion, the court finds that the plaintiff has failed to demonstrate that his termination was because of his migraines or that the defendant's articulated reason for its actions is mere pretext. The court additionally finds that the plaintiff has not demonstrated that the defendant failed to provide him with a reasonable accommodation. Accordingly, the court agrees that Vanderberg's ADA claims are without merit.

*Plaintiff's FMLA Claim*

Lastly, Vanderberg asserts an FMLA retaliation claim, arguing that Rexam discharged him because he inquired about the possible need for FMLA leave. Vanderberg's FMLA claim has three elements: (1) that he was protected under the FMLA; (2) that he suffered an adverse employment action; and (3) that the adverse decision was made because he sought protection under the FMLA. *Austin v. Potter*, 2009 WL 259613 (S.D. Miss. 2009) (citing *Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574, 582 (5th Cir. 2006)). Rexam contends that

the plaintiff cannot make out a prima facie case because he cannot satisfy the first or third elements.

The court finds it necessary to first point out that the plaintiff barely addressed this claim in his response to the summary judgment motion. Additionally, within his very brief response, the plaintiff makes neither an argument to establish his prima facie case, nor to show pretext. Instead, Vanderberg merely points to the timing between his discussions with Doyle and his subsequent termination and asserts that a reasonable jury could conclude, based on this alone, that Rexam violated his FMLA rights.

Notwithstanding the fact that the plaintiff wholly failed to provide the court with substantive arguments regarding the aforementioned elements, the court must still address the claim. The undisputed facts show that Vanderberg contacted Rexam on September 24, 2014, to discuss the possible need for FMLA leave because of his migraines. Rexam immediately sent him the requisite FMLA paperwork with an accompanying cover letter clearly indicating the completed paperwork must be submitted by October 8, 2014.

Despite this clear due date, Rexam did not receive the plaintiff's paperwork until December 14, 2014, over two months late. To make matters worse, the paperwork was also incomplete. Moreover, the facts show that Vanderberg has applied and been approved for FMLA leave in the past, so he was certainly familiar with what was required. Because the plaintiff undeniably did not properly submit his FMLA paperwork, the court finds that he was not protected under the FMLA. *See Comeaux-Bisor v. YMCA of Great Houston*, 290 F. App'x 722 (5th Cir. 2008) (holding that the plaintiff was not protected under the FMLA because she failed to complete the employer's required paperwork).

The court also concludes that Vanderberg would be unable to establish that his termination was because of his inquiry about FMLA leave. The only evidence presented

relevant to this element is the temporal proximity between his discussions with Doyle in September of 2014 and his subsequent termination in January of 2015. For the reasons already discussed with regard to Vanderberg's ADA claim, the court finds these facts insufficient to demonstrate the necessary causal connection. Accordingly, the court agrees that the plaintiff has failed to establish a prima facie case on his FMLA claim.

## Conclusion

Based on the foregoing discussion, the court finds that the defendant's motion for summary judgment is well-taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 6th day of February, 2017.

 /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**